PIRAZZI, PLAINTIFF AND APPELLEE, *v.* VIVES, DEFENDANT AND
APPELLANT.

APPEAL from the District Court of Ponce in an Action in
Warranty.

No. 2626.—Decided May 22, 1922.

WARRANTY—RENTS AND PROFITS—RES JUDICATA—GOOD FAITH.—The appellant
not having challenged the statement.made by the appellee to the effect that
in a former action the only rents and profits sought to be recovered were such
as had accrued up to the time of filing the first complaint, it would seem to
follow that the decision on the earlier appeal is not *res judicata,* either upon
the question of good faith or of liability for rents and profits received after
the commencement of the original action.

ID.—ID.—DEPOSIT—COMMUNITY PROPERTY.—When a warrantor attempts to dis-
charge and settle his obligation he can not do so by depositing an amount
less than the actual value of the outstanding interest, involving apparently
the right of the warrantor to fix by his own estimate the value of the undi-
vided interests in question and to oblige both plaintiff and the court to abide
by such arbitrary determination.

The facts are stated in the opinion.

*Mr. J. F. Fernández Coronas* for the appellant.

*Mr. J. Tous Soto* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The complaint herein alleges that in April, 1907, defend-
ant sold plaintiff a city lot without specific covenant of war-
ranty; that in January, 1916, by virtue of a decision of this
court various individuals (whom we may designate as the
González heirs) were adjudged to be the owners of an un-
divided interest in the said lot purchased by Vives at a tax
sale; that as a result of such judgment and from the date
thereof Pirazzi had been deprived of the said undivided in-
terest which at the time was worth $334.47; that in the
revendicatory action referred to Vives was duly called as
warrantor; that thereafter the González heirs brought
another action against Pirazzi for partition and for the re-
covery of rents and profits, resulting in a sale of the prop-
erty which was bought by Pirazzi, the only bidder, for $600;
that 9 per cent of this amount was deducted by the marshal

and the remainder, amounting to $590.60, by order of the court, was distributed among the co-owners, the González heirs receiving $334.47 and Pirazzi $256.13; that by the same judgment Pirazzi was required to pay $200 as rents and profits from May 22, 1913, date of the commencement of the earlier action, to April 3, 1918, and $3 per month from and after the date last mentioned until the day of the sale, July 8, 1918, amounting to the sum of $9, and making a total of $209; that Pirazzi paid as costs, disbursements and attorney fees in the first action $182.50, and in the second suit $227, making a total of $409.50.

The prayer was for judgment in the sum total of these items, to wit, $961.97, with legal interest on the several amounts from the date of expenditure, together with costs, disbursements and attorney fees.

The court below found the facts to be as alleged in the complaint and Vives appeals from an adverse judgment which follows the language of the prayer.

There is no separate assignment of errors, but the theory of the twenty-page brief for appellant seems to be that the trial court erred, first, in not applying section 336 of the Code of Civil Procedure on the one hand and, on the other, in following section 1075 of the Civil Code which appellant insists is pertinent only in the case of a delinquent debtor who deserves to be mulcted in damages in the form of interest; second, in having allowed the item of $209 as reimbursement for rents and profits recovered by the González heirs in the second suit and covering the period from May 22, 1913, to July 8, 1918; and, third, in allowing the two items of costs paid by Pirazzi in the two suits.

On the first appeal this court, at page 377 of Volume 23, P. R. R., said:

"Inasmuch as it does not appear that defendants possessed in *bad faith,* the claim as to fruits, rents and profits made by complainants does not lie, nor does the one for damages.

"For any question of improvements the owners shall be subject to the provisions of section 370 of the Civil Code."

But appellant does not challenge the statement made by counsel for appellee to the effect that in the former action the only rents and profits sought to be recovered were such as had accrued up to the time of filing the first complaint. It would seem to follow that the decision on the earlier appeal is not *res judicata* either upon the question of good faith or of liability for rents and profits received after the commencement of the original action. If the same rule should apply to the period covered by the averments of the complaint and the judgment below herein, the burden is upon appellant to show this. We cannot assume that the court below erred in this regard, nor can we undertake to explore and determine without the aid of counsel every question suggested which might constitute a possible ground for reversal.

It seems that, shortly after the decision of this court on the former appeal, Vives deposited a check for $309 in an attempted discharge and settlement of his obligation, but this amount was less than the actual value of the outstanding interest as disclosed by the judicial sale and as finally fixed by the trial judge. The deposit is not shown to have been acquiesced in by Pirazzi nor approved by the court, nor does appellant give any very plausible reason in support of the premise upon which this step seems to be based, involving apparently the right of the warrantor to fix by his own estimate the value of the undivided interests in question and to oblige both plaintiff and the court to abide by such arbitrary, *ex parte* determination, to say nothing of the elimination of all other items.

Section 336 of the Code of Civil Procedure exempts from payment of costs, in an action for the recovery of money, a defendant who alleges and proves to the satisfaction of the court "that before the commencement of the action he

tendered to the plaintiff the full amount to which he is entitled, and thereupon deposits in court for plaintiff the amount so tendered.''

Section 1075 of the Civil Code reads thus:

''Sec. 1075.—Should the obligation consist in the payment of a sum of money, and the debtor should be in default, the indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest.

''Until another rate is fixed by the Government, interest at the rate of six per cent per annum shall be considered as legal.''

Technically, perhaps, legal interest should have been allowed from and after the date upon which the defendant refused to reimburse plaintiff herein for the sum total of his disbursements rather than from the respective dates upon which such disbursements were made, but appellant draws no such distinction, nor does it appear that the attention of the court below was called to the matter, and, in the absence of any showing whatever as to the amount of the difference involved, we may assume that it comes within the rule of *de minimis non curat lex.*

The section of the Civil Code in the mind of the court below was number 1381, which says that:

''If a warranty should have been stipulated, or if nothing has been agreed upon on this point, if the eviction has taken place, the vendee shall have the right to demand of the vendor—

''1. The restitution of the price which the thing sold had at the time of the eviction, whether it be greater or less than that of the sale.

''2. The fruits or proceeds, should he have been adjudged to deliver them to the person who won the suit instituted against him.

''3. The costs of the suit which caused the eviction, and, in a proper case, those of the suit instituted against the vendor for the warranty.

''4. The expenses of the contract, if the vendee should have paid them.

''5. The damages and interest and the voluntary expenses or of

mere recreation or ornamentation, should the sale have been made in bad faith.''

In so far as the second assignment is based upon the previous decision of this court, it will suffice to repeat that appellant has not shown that the rents and profits now sought to be recovered are the rents and profits involved in the revendicatory action. It occurs to us that some question might be raised as to the liability for rents and profits received after the final determination of the former suit, as distinguished from the period that elapsed between the date of filing the first complaint and that of the decision in that case by this court,—but here again appellant does not clearly differentiate between the constructive and actual eviction as fixing the exact date thereof, and cites no authority whatever directly bearing upon this point. In any event, the greater part of the rents and profits accrued prior to the decision of January 26, 1916, and it may be that the difference involved was deemed too insignificant to justify elaboration of the matter in the briefs. In the absence of any satisfactory showing upon the question of *res judicata,* the liability of defendant for the major portion above mentioned is quite clear.

The argument under the third assignment, in so far as not already covered by what we have said in regard to the other matters discussed, does not demand serious consideration, although it does suggest certain more or less interesting questions that might have been developed to advantage by appellant.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.